EXHIBIT "A"

## TERMS AND CONDITIONS OF SALE

PURSUANT TO SECTIONS 363(b) and 704(a) OF TITLE 11, UNITED STATES CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004, AND THE LOCAL RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE BANKRUPTCY TRUSTEE FOR DANIEL GALLAGHER AKA DANIEL G. GALLAGHER AKA DANIEL GERARD GALLAGHER, WILL SELL THE ESTATE'S INTEREST IN AND TO CERTAIN ASSETS AT PUBLIC AUCTION.

1. On March 23, 2023, Daniel Gallagher aka Daniel G. Gallagher aka Daniel Gerard Gallagher (the "**Debtor**"), filed a voluntary petition for relief under chapter 7 of title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**").

2. Robert L. Pryor (the "**Trustee**") is the duly appointed, qualified, permanent Chapter 7 Trustee of the Debtor's estate.

3. These Terms and Conditions of Sale are promulgated in connection with the Bankruptcy Code-authorized Public Sale (the "**Public Sale**") of the Debtor's estate's right, title and interest in and to the real property located at 1640 Sterling Road, Cutchogue, New York 11935 (the "Property").

4. Maltz Auctions, Inc. d/b/a Maltz Auctions ("Maltz"), the Trustee's Bankruptcy Court retained auctioneer, will conduct the Public Sale.

5. The Trustee is represented by Pryor & Mandelup L.L.P. ("P&M") with offices at 675 Old Country Road, Westbury, New York 11590, Attn: Robert L. Pryor, Tel. (516) 997-0999.

6. The Public Sale will be held via an online-only auction from Tuesday, August 15, 2023, at 11:00 am through Thursday, August 17, 2023, at 11:00 am (the "Sale Date"). Online bidding will be made available for pre-registered bidders via Maltz's online bidding App available for download in the App Store or on Google play, and via desktop bidding at RemoteBidding.MaltzAuctions.com. Bidding is scheduled to close at 11:00 am on Thursday, August 17, 2023. However, if a bid is placed with less than one-minute remaining, the bidding period will be extended so one minute remains for competing bids to be entered. This extension will continue until there are no higher bids placed within the final one minute prior to the close of the auction.

7. In order to be permitted to bid on the Property, prior to the commencement of the Public Sale, each prospective bidder must deliver to Maltz an official cashier's check made payable to "Robert L. Pryor, Chapter 7 Trustee" in an amount of Seventy thousand dollars ($70,000) (the "**Qualifying Deposit**"), which shall serve as a partial good faith deposit against payment of the purchase price by such competing bidder as Trustee determines to have made the highest or best bid for the Property (the "**Successful Purchaser**"). Within 48 hours after conclusion of the Public Sale, the Successful Purchaser shall deliver to the Trustee, by certified check or bank check made payable to "Robert L. Pryor, Chapter 7 Trustee" an amount equal to ten (10%) percent of the high bid realized at Public Sale minus the Qualifying Deposit (together with the Qualifying Deposit, the "**Deposit**"). Failure of the Successful Purchaser to tender the ten (10%) percent Deposit of the high bid at Public Sale within 48 hours after conclusion of the Public Sale shall result in an immediate default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale and shall result in the forfeiture of all earnest monies paid.

8. The Successful Purchaser and the competing Bidder who the Trustee determines to have made the second highest or best bid for the Property (the "**Second Highest Bidder**") must execute, and thereby agree to be bound by (i) these Terms of Sale, and (ii) a Memorandum of Sale. At the conclusion of the Auction Sale, the Trustee or Maltz will return the Qualifying Deposits to all other bidders, except to the Successful Bidder and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within 48 business hours once the Successful Bidder posts the total required 10% deposit. If the Successful Bidder does not post the total required 10% deposit the

Second Highest Bidder will have 48 hours from notification from the Trustee that the Successful Bidder failed to deliver to the Trustee, by certified check or bank check made payable to "Robert L. Pryor, Chapter 7 Trustee" an amount equal to ten (10%) percent of its bid at Public Sale, minus the Qualifying Deposit (together with the Qualifying Deposit, the "**Deposit**").

9. The high bid at Public Sale is defined herein as the "**Purchase Price**".

10. The Successful Purchaser or the Second Highest Bidder, as the case may be, must pay the balance of the Purchase Price for the Property to the Trustee by cashier's check or bank check. The Successful Purchaser or the Second Highest Bidder, as the case may be, must close title to the Property forty-five (45) days following the Sale Date, **TIME BEING OF THE ESSENCE as to the Successful Purchaser** or the Second Highest Bidder, as the case may be, although such date may be extended solely by the Trustee. Notwithstanding the foregoing, the Trustee shall grant the Successful Purchaser or the Second Highest Bidder, as the case may be, a single thirty (30) day extension (the "**Extension**"), at the request of the Successful Purchaser, provided Successful Purchaser posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the tenth (10th) day following court approval (the "**Additional Deposit**"). The Additional Deposit shall be made by certified check or bank check made payable to "Robert L. Pryor, Chapter 7 Trustee" and together with the original Deposit, shall be deemed the "**Deposit**". **TIME BEING OF THE ESSENCE as to the Successful Purchaser, or Second Highest Bidder** although such date may be extended solely by the Trustee.

11. If the Successful Purchaser fails to post the total required ten (10%) percent Deposit within 48 hours following the Public Sale, or fails to otherwise perform under these Terms and Conditions of Sale ("**Successful Purchaser's Default**"), the Trustee, in his sole and absolute discretion, shall be authorized to contact the Second Highest Bidder without any further notice or approval of the Bankruptcy Court, without giving credit for the Qualifying Deposit, and Deposit forfeited by Successful Purchaser, and upon such other terms and conditions as the Trustee deems appropriate. Thereafter, the Second Highest Bidder shall be deemed for all benefits and obligations herein to be the Successful Purchaser.

12. The closing shall take place at the offices of Pryor & Mandelup L.L.P., with offices located at 675 Old Country Road, Westbury, New York 11590 (the "**Closing**").

13. The Successful Purchaser or the Second Highest Bidder, as the case may be, shall pay any and all costs and expenses that may be incurred in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other Property inspections; appraisals, reports and other costs of Property due diligence; and County, State, City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Property from the Trustee at Closing. The Successful Purchaser or the Second Highest Bidder, as the case may be, acknowledges that they will be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Purchaser or the Second Highest Bidder, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms. In connection with the Closing and Closing date, the Successful Purchaser or the Second Highest Bidder, as the case may be, is hereby given notice that <u>**TIME IS OF THE ESSENCE against the Successful Purchaser or the Second Highest Bidder, as the case may be, and the failure of the Successful Purchaser or the Second Highest Bidder, as the case may be**, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing date, will result in an immediate forfeiture of the Deposit and the termination of the Successful Purchaser's right to acquire the Property under these Terms and Conditions of Sale and the Memorandum of Sale</u>. The Successful Purchaser or the Second Highest Bidder, as the case may be, shall be obligated to close title to the Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Purchaser or the Second Highest Bidder, as the case may be, to cancel or avoid its obligation under

these Terms of and Conditions of Sale and the Memorandum of Sale other than the Trustee's inability to deliver insurable title to the Property. Further, the Successful Purchaser or the Second Highest Bidder, as the case may be, shall have demonstrated, to the satisfaction of Maltz and the Trustee, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale and the Memorandum of Sale, without delay. The Trustee reserves the right to reject any Purchaser or Bidder who the Trustee believes, in its sole discretion, is not financially capable of consummating the purchase of the Property. Expenses incurred by the Successful Purchaser or the Second Highest Bidder, as the case may be, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall Maltz, the Trustee, the Debtor or their professionals be responsible for, or pay, such expenses.

14. The Successful Purchaser, or the Second Highest Bidder as the case may be, has five (5) days from the Sale Date to order title, copy of which shall promptly be provided to P&M. The Successful Purchaser or the Second Highest Bidder, as the case may be, has twenty (20) days from the Sale Date to advise the Trustee through P&M (by electronic mail to RLP@pryormandelup.com of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Property. Failure of the Successful Purchaser or the Second Highest Bidder, as the case may be, to advise P&M within twenty (20) days from the Sale Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects, with Trustee reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

15. Neither the Trustee, Trustee's counsel, Maltz, nor the Debtor's estate are liable or responsible for the payment of fees of any broker that has not previously been approved by Order of the Bankruptcy Court.

16. Maltz, the Trustee and the Debtor and their professionals have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or this Public Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the current or future rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the property. Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. Maltz, the Trustee, the Debtor and their professionals shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Property, made or furnished by Maltz, the Trustee or the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent Maltz, the Trustee or Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms and Conditions of Sale and the Memorandum of Sale.

17. The Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they

existed immediately prior to the Closing, and sale of the Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions and (f) existing tenancies at time of closing; provided, however, **the Property shall be delivered free and clear of any and all monetary liens**. By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. Neither Maltz, the Trustee, the Debtor nor any of their collective representatives makes any representations or warranties with respect to the permissible uses of the Property including, but not limited to, the zoning of the Property. All Bidders acknowledge that they have conducted their own due diligence in connection with the Property and are not relying on any information provided by Maltz, the Trustee, the Debtor, or their professionals. The Property will be sold subject to any and all violations requiring corrective action.

18. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the Bankruptcy Code or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee or by the Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Public Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

19. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Public Sale of the Property. By making a bid for the Property, all Bidders will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

20. If the Trustee is unable to deliver the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, the Trustee's and Maltz' only obligation will be to refund the Deposit, without interest, to the Successful Purchaser or the Second Highest Bidder, as the case may be, and upon such refund, the Successful Purchaser or the Second Highest Bidder, as the case may be, will have no claim or recourse against the Trustee, Maltz, the Debtor or their professionals and shall have no further rights under these Terms and Conditions of Sale or Memorandum of Sale.

21. The Public Sale of the Property is subject to confirmation by the Trustee. P&M shall notify the Successful Purchaser whether the Public Sale is confirmed.

22. The Bankruptcy Court shall determine any disputes concerning the Public Sale of the Property. By participating in the Public Sale, all Bidders, including the Successful Purchaser and the New Successful Purchaser, consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

23. These Terms and Conditions of Sale may be signed in counterparts and by PDF/electronic signatures which when taken together a shall be deemed one indivisible original document.

24. **The Property shall be delivered vacant of tenancies/occupancies at closing.**

I have read these Terms and Conditions of Sale and agree to be bound by them.

By: _____  Date:_____

Print Name: _____

## MEMORANDUM OF SALE – SUCCESSFUL PURCHASER

Purchase Price: _____

The undersigned purchaser has this 17th day of August, 2023, agreed to purchase the Debtor's estates real property located at 1640 Sterling Road, Cutchogue, New York 11935 (the **"Property"**) pursuant to the Terms and Conditions of Sale (the **"Terms of Sale"**), to which this Memorandum is attached and made a part thereof, from Robert L. Pryor, Esq., (the **"Trustee"**) in his capacity as the chapter 7 Trustee of the estate of Daniel Gallagher aka Daniel G. Gallagher aka Daniel Gerard Gallagher (the **"Debtor"**), for the sum of $_____ and being sold by the Trustee for the highest or best offer as the Trustee in his sole discretion determines, subject to Bankruptcy Court approval, and hereby promises and agrees to comply with the terms and conditions of the Public Sale for the Property, as set forth in the annexed Terms of Sale.

_____
SUCCESSFUL PURCHASER (Signature)

_____
SUCCESSFUL PURCHASER (Signature)

_____
PRINT NAME

_____
PRINT NAME

_____
ADDRESS

_____
ADDRESS

_____
ADDRESS (City, State, Zip)

_____
ADDRESS (City, State, Zip)

_____
TELEPHONE NUMBER

_____
TELEPHONE NUMBER

_____
EMAIL ADDRESS

_____
EMAIL ADDRESS

Received from _____ the sum of $70,000.00 DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price in the above sale was for the sum of $_____.

_____
MALTZ AUCTIONS, INC.

### SUCCESSFUL PURCHASER ATTORNEY INFORMATION

Name _____
Address _____
Phone _____
Email _____

## MEMORANDUM OF SALE – SECOND HIGHEST BIDDER

Purchase Price: _____

The undersigned purchaser has this 17th day of August, 2023, agreed to purchase the Debtor's real property located at 1640 Sterling Road, Cutchogue, New York 11935 (the **"Property"**) pursuant to the Terms and Conditions of Sale (the **"Terms of Sale"**), to which this Memorandum is attached and made a part thereof, from Robert L. Pryor, Esq., (the **"Trustee"**) in his capacity as the chapter 7 Trustee of the estate of Daniel Gallagher aka Daniel G. Gallagher aka Daniel Gerard Gallagher (the **"Debtor"**), for the sum of $_____ and being sold by the Trustee for the highest or best offer as the Trustee in his sole discretion determines, subject to Bankruptcy Court approval, and hereby promises and agrees to comply with the terms and conditions of the Public Sale for the Property, as set forth in the annexed Terms of Sale.

_____     _____
SECOND HIGHEST BIDDER (Signature)     SECOND HIGHEST BIDDER (Signature)

_____     _____
PRINT NAME                                                    PRINT NAME

_____     _____
ADDRESS                                                          ADDRESS

_____     _____
ADDRESS (City, State, Zip)                         ADDRESS (City, State, Zip)

_____     _____
TELEPHONE NUMBER                              TELEPHONE NUMBER

_____     _____
EMAIL ADDRESS                                         EMAIL ADDRESS

Received from _____ the sum of $70,000.00 DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the offer in the above sale was for the sum of $_____.

_____
MALTZ AUCTIONS, INC.

### SECOND HIGHEST BIDDER ATTORNEY INFORMATION

Name _____
Address _____
Phone _____
Email _____