UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                                                          Chapter 7

        Daniel Gallagher
        Aka Daniel G Gallagher                                       Case No.: 8-23-70994-las
        Aka Daniel Gerard Gallagher,

                          Debtor(s).
----------------------------------------------------------X

**AFFIRMATION IN PARTIAL OPPOSITION AND REQUEST FOR ADJOURNMENT**

        Richard F. Artura, Esq., a member of the firm of Phillips, Artura and Cox and an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under the penalty of perjury:

        1.     We are the attorneys representing the Chapter 7 debtor, Daniel Gallagher.

        2.     This Affirmation is in Partial Opposition to the Trustee's motion to authorize the sale of the debtor's residence at 1640 Sterling Road, Cutchogue, NY (the "residence") returnable July 18th, 2023 at 10:00 a.m., subject to counsel's request for adjournment.

*HOMESTEAD EXEMPTION*

        3.     In the event there will be a meaningful distribution to unsecured creditors, debtor does not object to that part of the motion authorizing the auction/sale of the debtor's residence. It is understood that the trustee standing in the shoes of unsecured creditors can use his business discretion to sell debtor's nonexempt property to make such a distribution.

        4.     However, the debtor has availed himself of the NYS Homestead Exemption pursuant to CPLR §5206 in the amount of $179,975.00.   See debtor's schedule C, filed under dkt item #1.   No objection to this exemption has been raised by the trustee or any creditor and no creditor, eligible or otherwise, has sought to set off any part of the exemption.

5. The Trustee while making application to pay other expense at closing, did not put a provision in the proposed order to pay the debtor's homestead exemption at closing. Assuming that the omission was an oversight and, in an effort to avoid unnecessary litigation, the undersigned requested that the trustee include such a provision in the proposed order. Mr. Pryor declined, stating in an email "…we need to have an accountant determine if there are capital gains tax, if any and that can't be done until we know the purchase price and appropriate deductions at closing. Tax liens get paid in full in accordance with 724 and 726, as you know."

6. The position of the trustee is untenable. Assuming there is equity in the home and it is sold, then the trustee's capital gains tax will have nothing to do with the debtor's homestead exemption. And it seems that for purposes unknown the trustee proposes to sell the property and somehow, if there is equity, he proposes to retain the exempt amount. However, the exempt amount is not even property of the bankruptcy estate. "Sections 522(b) of the Bankruptcy Code, and 282 of the Debtor and Creditor Law give effect to the state law exemption by allowing a debtor to declare the exemption and remove the property from the bankruptcy estate. 11 U.S.C. § 522(b); N.Y.Debt. & Cred.Law § 282 (McKinney 1994)." *In re Giordano,* 177 B.R. 451, 454 (Bankr. E.D.N.Y. 1995). Moreover, if there is equity in the property, then the trustee must pay the duly claimed homestead exemption. "New York has provided a homestead exemption since 1850 in order to protect a homeowner from a forced sale of his or her dwelling to satisfy a money judgment. *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 260 (2d Cir. 2009). The statute is founded upon considerations of public policy and has introduced a new rule regarding the extent of property which shall be liable for a man's debts. The legislature were of the opinion, looking to the advantages belonging to the family state in the preservation of morals, the education of children, and possibly even, in the encouragement of

hope in unfortunate debtors, that this degree of exemption would promote the public welfare, and perhaps in the end, benefit the creditor." *In re Ward*, 595 B.R. 127, 137 (Bankr. E.D.N.Y. 2018). The homestead exemption is, as it should be, nearly sacrosanct.   It is unfortunate that some panel trustees cannot and do not comprehend the trauma in the loss of a family home to hapless people of limited means.

7. Assuming the homestead is fully encumbered, there is no purpose to the sale as the trustee would be acting *ultra vires* as he cannot sell fully encumbered property.   The Executive Office for U.S. Trustees Handbook for Chapter 7 Trustees guides trustees on how to administer cases (hereinafter "Trustee Handbook").   The Trustee Handbook states that while a Chapter 7 trustee has authority to sell property of the estate under § 363(b), there are restrictions, namely, that a trustee should not sell a fully encumbered asset.   8F Handbook for Chapter 7 Trustees, 4-16 (2012).   The Trustee Handbook also states: "A trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors." *Id.* 10F 4-16 (2012).   Surely this trustee is familiar with *In re Stark*, No. 20-CV-4766(EK), 2022 WL 2316176, at *1 (E.D.N.Y. June 28, 2022) where the District Court ruled against him finding, among other things that "[A] trustee generally may not administer an asset that is fully encumbered, as doing so cannot provide a benefit to unsecured creditors, but must instead abandon that asset."   That case forestalled Mr. Pryor's efforts to sell property without payment of the homestead exemption.   As such, if the sale does not generate enough to pay the secured claims and tax liens alone, then the trustee has no authority or reason to sell the property. It must be noted that most of the tax debt is secured.

8. After receiving the trustee's email, he furthered his efforts to deprive the debtor of his homestead exemption and directed the debtor's counsel to 11 USC § 522(c)(2)(B) and to *In*

*re Laredo*, 334 B.R. 401 (Bankr. N.D. Ill. 2005).   This case was discussed by the Bankruptcy Appellate Panel in *In re Bird*, 577 B.R. 365, 385 (B.A.P. 10th Cir. 2017), where they upheld payment of the homestead exemption, stating "While it is true that property exempt from the bankruptcy estate remains subject to a tax lien perfected before the petition date pursuant to §522(c)(2)(B), that does not mean Debtors are not entitled to claim the homestead exemption in the first place, or that the Trustee is entitled to administer and sell exempt property to satisfy such debt or to create a fund for paying administrative expenses."   *Id.* at 384.   The Appellate Panel harshly criticized *Laredo* in their Footnote 101, repeated below.[1]   *Bird* was cited by the District Court in *In re Stark*, where the trustee herein was the appellant in a case involving a "scheme" (the courts' words in *Bird* ) similar to the instant case.

9. The trustee has no legal basis for omitting from the proposed sale order a provision to pay debtor's homestead exemption, either at or before closing.   If the house sells for a high amount, then he must pay the homestead at closing and then he is free to use the balance to pay his administrative fees and ostensibly he will leave something to pay unsecured creditors.[2]   The exemption would be of little to no benefit to the debtor if it cannot be used to secure alternative housing.   Mr. Pryor is proposing that the debtor remain homeless while he sits on monies that are not even property of the estate.   And if the house cannot be sold, then it must

---

1 Perhaps the Trustee took his cue from this play book: *The IRS Is Your Friend: How Trustees Can Use Tax Liens To Weave Straw Into Gold*, 29 Cal. Bankr. J. 191 (2007). In that article, the author advocates that "because of the existence of federal tax liens, estates that appear to have no value in fact do have value because the trustee can use the tax liens to trump the debtors' exemptions and create value for the estate." *Id.* The article does not, of course, point out that this procedure also creates a commission for a Chapter 7 trustee under § 326. For support, the author cites to *Grochocinski v. Laredo (In re Laredo)*, 334 B.R. 401 (Bankr. N.D. Ill. 2005), and *In re Bolden*, 327 B.R. 657 (Bankr. C.D. Cal. 2005). Appellants rely on these cases as well. While such cram down procedures may have been allowed in those cases, the decisions of other bankruptcy courts are not binding on the Utah bankruptcy court. Further, we do not find such schemes to be in keeping with the Bankruptcy Code's fresh start policy for debtors, or the Chapter 7 trustee's obligation to administer the estate solely for the benefit of creditors.

2 Debtor and counsel are cognizant that certain domestic support arrears are outstanding.   If there are not enough funds to pay the support arrears claim Debtor intends to pay from the exemption award (directly to NYS Support Collection Unit and with the guidance of state court counsel) whatever is still due to satisfy those arrears from his exempt amount.   Debtor's Schedule I details the child support arrears payment of $1,973/month which is deducted from debtor's Social Security benefit and which debtor is anxious to have cancelled by the debt being paid in full.

be abandoned with the requested provision requiring payment of the homestead at closing being moot.   Under any scenario a decretal paragraph to pay the homestead exemption at closing is appropriate, equitable and necessary under case law and statutory predicate.

*EJECTMENT*

10.    Without citing to any authority, the trustee requests in ¶18 that the debtor must be out of his home two (2) weeks <u>prior</u> to closing.   It is respectfully submitted that the trustee has no authority or rational basis for such a request.[3]   As a matter of equity, if the court deems it appropriate to dispossess the debtor, then it should be done only if the debtor fails to vacate 30 days after payment of the homestead exemption.   This arrangement would be far more equitable than dispossessing a broke debtor weeks before a closing that may never even occur.

*ABANDONMENT*

11.    Neither Maltz Auctions nor the Trustee will share the auctioneer's estimate of the value of the home.   The debtor's schedules reveal an estimated market value of 1640 Sterling Road, Cutchogue, NY of $932,600, as reported by Zillow.   It is conceded Zillow is at best a rough and less than reliable estimate of value.   Schedule D reveals the following secured debt to: PHH of $551,221, plus property taxes and interest from May 13, 2019;[4]  Signature Bank of $57,000 plus interest; NYS Dept of Taxation and Finance (NYS) $95,586; NYS $108,303.10; and NYS $4766.30, for minimum total secured debt of at least $816,876.30.   Schedule C avails the Homestead Exemption of $179,975 for a total of unavoidable liens of at the very least:

---

[3] In state foreclosure auctions sales are subject to present occupancies.  In the Motion papers ¶16 the trustee states that "the Real Property is to be sold "AS IS", "WHERE IS", "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind".   This statement in incongruous with the request for an Order providing the debtor to vacate.

[4] May 13, 2019 being the date of entry the foreclosure judgment.

$996,851.50.[5]  In his motion ¶11, the movant states that he has a "valid business justification for the sale of the Real Property."  The Trustee should be required to justify that very position by giving at least an estimate and account of what he anticipates as a distribution to unsecured creditors before an auction is scheduled and the debtor has to make moving arrangements and find alternative living arrangements in this very difficult housing market.

      12.     This debtor filed this petition knowing that a sale was a possibility but secure in the fact that he was entitled to a homestead exemption.  The debtor welcomed Maltz into his home and allowed inspections, questions, the taking of photographs, etc.  Debtor has also accommodated the request of the auctioneer and scheduled two (2) open houses in August.  Debtor submits that requesting a projection before a sale order is entered is appropriate.  In asset cases, when the property is fully encumbered and of nominal value to the estate, the trustee must immediately abandon the asset and contact the secured creditor immediately so that the secured creditor can obtain insurance or otherwise protect its own interest in the property." *In re Bird*, at 377.

      13.     Judge Grossman recently held that the debtors "should not be fearful that utilizing the rights Congress has given them may come at the cost of subjecting their children or other members of their family to ill-conceived actions by an overly aggressive trustee."  He reminded that "bankruptcy is a process that combines law and equity." *In re Martino,* No. 21-72023-REG, 2023 WL 3828486, at *1 (Bankr. E.D.N.Y. June 5, 2023).  Congress has given all debtors a homestead exemption which by statute is not property of the bankruptcy estate.  Through a "scheme" the trustee herein is threatening that right.  Countless times a day bankruptcy

---

[5] This bankruptcy was done on an emergency basis as to stop a sale the following day leaving no time to run a title report.  The Suffolk County website was and still is offline due to hacking leaving debtor's counsel with only client records and the credit report to estimate liens against the property as debtor has no financial ability to pay for a title report, and the trustee has not offered his title report so that debtor can amend his schedule D.

professionals calculate the same basic formula to determine Chapter 7 eligibility - market value minus unavoidable liens minus exemptions.   This trustee's simply ignoring the exemption part of the equation and then threatening to dispossess the indigent debtor surely does not "reach a fair and equitable result for debtors and their creditors." *Id.*   The undersigned does not contend that this trustee's actions reach the egregious level detailed in *Martino*, *infra.*; however, by his actions and under the prevailing and controlling authority that is or should be known to him, Mr. Pryor utterly fails "to balance the rights of the debtor honestly and fairly with the rights of creditors" *Id.*   In short, if he wishes to sell debtor's homestead, he should do the right thing and pay the exemption without need for pointless litigation.   Even poker players don't send losers away without cab fare home.

14.     Mr. Pryor's email to the court dated July 7 @ 2:56 pm states; "We would suggest that once the results of the auction sale are obtained and we ask the Court to approve same, at that time the issue of the allocation of the sale proceeds and the treatment of the debtor's claimed exemption will be justiciable and can properly be addressed".   However, his affirmation and the proposed order are in direct contradiction.   See his affirmation in support at pages 1-2 where he requests in sub ¶ i payment of closing costs including pickup fees, in sub ¶ ii payment of capital gains taxes; in sub ¶ iii payment to his auctioneer and in sub ¶ iv payment of his auctioneers' expenses, notwithstanding that all such expenses are subordinate to the homestead exemption as it is not part of the bankruptcy estate.   The real question is why are these expenses clearly detailed and the homestead exemption clearly omitted?   There is no basis in law or fact for Mr. Pryor's statement in his email that this case has nothing to do with the homestead exemption. Quite the contrary he is doing everything possible to elude the payment *vis a vis* this application relying on a rarely cited minority holding.   And if, *arguendo,* the proposed order to sell was not

objected to there is no doubt he would later claim that any of debtors' objections regarding the exemption were or are untimely and/or *res judicata*.   And if the court follows the majority holdings how would the debtor retrieve the homestead monies back from the trustees' agents?   Debtor has no issue with the procedure now outlined in the trustee's July 7 @ 2:56 pm email that the closing be delayed until payment resolution by the court and, of course, anticipated appeals.   Debtor requests an order that after a projection of income is submitted and after the auction occurs that Maltz hold the deposit and that closing occur only after the court determines priority of payment and after any appeals are determined.   This method is in essence what the trustee proposes in his email.

*ADJORNMENT*

15.    On July 18th, 2023, the proposed return date of this motion the undersigned will be out of the country celebrating my wife's birthday with family at a resort in Bulgaria.   Request has been made and denied for an adjournment.   The written adjournment request was made on July 6, 2023, twelve (12) days before the return date and the undersigned had requested of the trustee's associate a consent of said adjournment at least a week before that.   That request was ignored.   This debtor will be prejudiced if counsel is not permitted to argue this complicated motion and counsel is now ready to do so as early as July 25, 2023 just seven (7) days after the scheduled date and with opposition timely filed.   Debtor's counsel will be some 3,200 miles away leaving only substitute counsel with only some long-distance preparation, to argue this opposition.   This trustee's refusal to consent to an adjournment and the Court's denial under these circumstances is nearly unprecedented and in essence denies the debtor counsel of his choice.

**WHEREFORE**, debtor requests that this motion be adjourned until after July 24, 2023, or until such time as the trustee presents a projection showing the likelihood of funds being available to unsecured creditors and if so for the auction to occur but for the deposit to be held by the auctioneer pending this Court's payment resolution and pending any timely filed appeals.

Dated: Lindenhurst, New York
      July 11, 2023

                              Yours, etc.

                              PHILLIPS, ARTURA & COX, ESQS.

                              <u>S/Richard F. Artura, Esq.</u>
                              By: Richard F. Artura, Esq.
                              Attorneys for Debtor Daniel Gallagher
                              165 South Wellwood Avenue
                              Lindenhurst, New York 11757
                              (631) 226-2100

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re

   DANIEL GALLAGHER

**CHAPTER 7**
**Case No.:** 8-23-70994-las

   Debtor.

*AFFIRMATION IN OPPOSITION*

**Phillips Artura & Cox**
**Attorneys for Debtor(s)**
**165 South Wellwood Avenue**
**Lindenhurst, NY 11757**

Service of a copy of the within is hereby admitted.
Dated:
Attorney(s) for

**SIR:  PLEASE TAKE NOTICE**

**[ ] NOTICE OF ENTRY:** that the within is a (certified) true copy of a    duly entered in the office of the clerk of the within named court on

**[ ] NOTICE OF SETTLEMENT:** that an order    of which the within is a true copy will be presented for settlement to the HON.    one of the judges of the within court, at    on    at

*Certified pursuant to 22 NYCRR Part 130-1.1-a*

**Dated: 12/08/2022**     Yours, etc.,

**TO:**          **BY: Richard F. Artura, Esq.**
           **Phillips Artura & Cox**
           **165 South Wellwood Avenue**
**Attorney(s) for: Debtor**    **Lindenhurst, NY 11757**
           **(631) 226-2100**