UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                    Chapter 7

Daniel Gallagher aka Daniel G. Gallagher
aka Daniel Gerard Gallagher,                              Case No.: 8-23-70994-las

                            Debtor.
------------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER OVERRULING DEBTOR'S OBJECTION TO AMENDED PROOF OF CLAIM NO. 1-2 FILED BY JENNIFER GALLAGHER

Before the Court is the objection ("Objection") [Dkt. No. 63] of the debtor, Daniel Gallagher, to the Amended Proof of Claim 1-2 filed by Jennifer Gallagher ("Claimant"), the debtor's former spouse, asserting an unsecured priority claim under 11 U.S.C. § 507(a)(1)(A)[1] for a domestic support obligation[2] in the amount of $272,862.62, consisting of $224,021.49 for child support and child support add-on expense arrears, $43,241.13 for spousal support and $5,600 for legal fees. *See* Amended Proof of Claim No. 1-2 ("Amended Claim"). Claimant filed a response to the Objection ("Response") [Dkt. No. 66]. The debtor filed a reply [Dkt. No. 68] and an amended reply [Dkt. No. 69] (collectively, "Reply"). The Court held a hearing to

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. will hereinafter be referred to as "§ (section number."

[2] The term "domestic support obligation" under the Bankruptcy Code means:
    a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
      (A) owed to or recoverable by –
          (i)     a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
          (ii)    a governmental unit;
      (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regarding to whether such debt is expressly so designated . . . .

11 U.S.C. § 101(14A).

1

consider the Objection on November 28, 2023. At the conclusion of the hearing, and for the reasons set forth on the record, the Court overruled the Objection. This Memorandum Decision and Order is consistent with, and explains further, the bases of the Court's ruling at the hearing.

## Jurisdiction

The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) that the Court may hear and decide. 28 U.S.C. § 157(b)(1).

## Background and Procedural History

The Court assumes the parties' familiarity with the facts and procedural history of debtor's chapter 7 case, *see* Memorandum Decision and Order dated October 25, 2023 [Dkt. No. 61],[3] and sets forth only those facts and procedural history as necessary to resolve the Objection. The relevant facts are undisputed, except as otherwise noted.

The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on March 23, 2023, and Robert L. Pryor, Esq. was appointed as the chapter 7 trustee. Prior to filing his chapter 7 petition, the debtor and Claimant were parties to a matrimonial action commenced in New York State Supreme Court, Nassau County, in 2012 and a Judgment of Divorce was entered on December 3, 2015 ("Judgment of Divorce"). The matrimonial court awarded Claimant, among other things, basic child support of $2,138.60 per month and 75.48% per

---

[3] *In re Gallagher*, 8-23-70994-las, 2023 WL 7030047 (Bankr. E.D.N.Y. Oct. 25, 2023).

month of certain child support add-on expenses, including, but not limited to, unreimbursed medical expenses, private school tuition, summer camp, and extracurricular activity expenses. Claimant timely filed a proof of claim in the debtor's chapter 7 case on April 16, 2023, and filed the Amended Claim on April 23, 2023. As noted above, the Amended Claim asserts an unsecured priority claim for a domestic support obligation under § 507(a)(1)(A) in the amount of $272,862.62, consisting of $224,021.49 for child support and child support add-on expense arrears, $43,241.13 for spousal support and $5,600 for legal fees. In support of the total amount due, the Amended Claim, *inter alia*, references a judgment entered in the parties' matrimonial action and filed on June 2, 2017 ("June 2017 Judgment") awarding child support arrears to Claimant in the amount of $105,487.53, plus interest from April 5, 2017 in the amount of $1,508.62 for a total of $106,996.15.

    A. <u>The Debtor's Objection</u>

The debtor objected to the Amended Claim. [Dkt. No. 63]. In the Objection, the debtor does not dispute that the Amended Claim is for a domestic support obligation entitled to a priority in payment under § 507(a)(1)(A) and is a nondischargeable debt under § 523(a)(5). Nor does the debtor assert that the amount claimed is excessive or calculated incorrectly. Rather, debtor's Objection is two-fold: (i) any payments on the Amended Claim must be made through the New York State's Child Support Processing Center and not to the Claimant directly and (ii) because the trustee only has approximately $44,000 available for distribution with respect to the Amended Claim, the amount of the Amended Claim must be partially disallowed and reduced to $44,305.03, the amount of outstanding child support arrears under the June 2017 Judgment as of October 10, 2023. For the latter argument, the debtor contends that, for purposes of distribution by the trustee, the amount due under the Amended Claim that exceeds the distribution is irrelevant. This, he contends, without lodging a challenge to the amount due or proffering any evidence to support his assertion that a partial disallowance

of the Amended Claim is required because the distribution will be in an amount less than the total amount of the Amended Claim.

B. <u>The Claimant's Response</u>

Claimant argues there is no legal or factual basis for reducing the amount of the Amended Claim to the outstanding child support arrears under the June 2017 Judgment. The Amended Claim sets forth in detail, with judgments attached, the $108,288.90 in child support add-on expense arrears, $43,241.13 in spousal maintenance and $5,600.00 in legal fees awarded, the amounts paid thus far and the amounts outstanding. Claimant has multiple judgments against the debtor and maintains that the Amended Claim does not reflect the full amount due and owing to her. Because the debtor refused to voluntarily make payments of his domestic support obligation, Claimant was forced to seek the assistance of New York State Child Support Services, and in particular the Child Support Enforcement Unit and its Support Collection Unit ("SCU"), which garnished the debtor's wages to satisfy the June 2017 Judgment.[4] Of the various judgments she has obtained against the debtor, Claimant only submitted the June 2017 Judgment to the SCU for collection. The only funds that have been paid to Claimant are those garnished by the SCU. Claimant argues there is no basis for the trustee to pay the Amended Claim through the SCU as opposed to paying her directly as the rightful holder of the claim. Claimant points out that the SCU has not filed a proof of claim in the debtor's chapter 7 case as Claimant is the holder of the claim and not the SCU.

C. <u>The Debtor's Reply</u>

The debtor argues that the state court judgments direct that child support payments must be made through the SCU and makes a passing reference in the amended reply that

---

[4] It is noted that the debtor considers the SCU's garnishment of his wages for past due child support to be a "voluntary" payment of his child support obligations. He is mistaken.

4

the *Rooker-Feldman* doctrine prevents this Court from changing the payment method dictated by the state court. [Dkt. No. 69]. On this point, the Court notes that other than a single sentence assertion that the *Rooker-Feldman* doctrine controls the disposition of the Objection, the debtor does not set forth the elements of the *Rooker-Feldman* doctrine nor demonstrate how the doctrine applies to the issue raised by the Objection. Further, in his Reply, the debtor disputes, albeit without any supportive facts, that Claimant is owed any monies for "add ons" or maintenance. He thus asks this Court to disallow that portion of the Amended Claim for "add ons" and maintenance and require Claimant to go back to the state court to seek allowance of these amounts. Again, the Court notes that this request is made without any proffer of evidence that the claimed amount for "add ons" and maintenance has been satisfied or calculated incorrectly.

### D. The Hearing

The Court held a hearing on the Objection on November 28, 2023 at which Richard Artura, Esq. appeared on behalf of the debtor and Andrew Thaler, Esq. appeared on behalf of the Claimant. At the hearing, the debtor conceded that the Amended Claim is for a priority nondischargeable domestic support obligation and did not challenge the amounts set forth in the Amended Claim or how the amount was calculated. Rather, the debtor argues that the Amended Claim must be partially disallowed because the trustee has approximately $44,000 to distribute to Claimant and the amount subject to collection by the SCU is slightly more than $44,000. For this reason, the debtor maintained that the Amended Claim must be reduced to the amount of the available distribution.

In response, Claimant contended that any distribution should not be restricted solely to child support arrears but rather applied towards her § 507(a)(1)(A) claim in general while the SCU continues collection efforts for child support arrears under the June 2017 Judgment. Claimant pointed out that a distribution to her directly would allow recovery on the non-child

5

support arrears portion of the Amended Claim to which the debtor did not lodge an evidentiary challenge. Claimant also reiterated that any distribution in respect of the Amended Claim should be made directly to her as the SCU is not a creditor of the debtor and did not file a proof of claim.

The debtor's counsel stated at the hearing that the *Rooker-Feldman* doctrine requires that the trustee follow the Judgment of Divorce which, according to counsel, requires that any proceeds from the sale of the marital residence be applied to satisfy outstanding child support arrears and must be paid directly to SCU. The relevant provisions in the Judgment of Divorce, attached to the debtor's Reply as Exhibit F, are as set forth below:

> ORDERED AND ADJUDGED that the Parties' marital residence located at 1640 Sterling Road, Cutchogue, New York (sometimes referred to herein as the "House") shall be sold as soon as practicable and each party is entitled to 50% of the net proceeds from the sale of the said House after payment of the mortgage, HELOC and ordinary and customary closing costs; and it is further
>
> ORDERED AND ADJUDGED that if any of the child support arrears due through December 31, 2013 are still due and owing at the time of the closing, they shall be paid to the plaintiff from the defendant's share of the net proceeds; . . . .

Judgment of Divorce, at 10. When the Court pointed out that the Judgment of Divorce only states that payment be made to Claimant, the plaintiff in the divorce proceeding, and does not specify that payments be made directly to the SCU, the debtor represented that the language requiring payment be made to the SCU is actually contained in a subsequent state court Order dated April 8, 2019 issued by Support Magistrate, Jennifer L. Castaldi ("April 2019 Order"), seeking to enforce the Judgment of Divorce. *See* Amended Reply, Exhibit D. The debtor's counsel read into the record at the hearing the following language in the April 2019 Order in support of his argument:

6

> IT IS FURTHER ORDERED that the payor, custodial party and any other individual parties immediately notify the Support Collection Unit of any changes.

However, a review of the April 2019 Order shows that Magistrate Castaldi found, among other things, that the debtor willfully failed to obey the Judgment of Divorce regarding his support obligations and the actual language in the April 19 Order provides as follows:

> IT IS FURTHER ORDERED that the payor, custodial party and any other individual parties immediately notify the Support Collection Unit of any changes ***in the following information: residential and mailing addresses, social security number, telephone number, driver's license number; and name, address and telephone numbers of the parties' employers; . . . .***

April 2019 Order, at 2 (emphasis added). Indeed, this Court corrected the record made by the debtor's counsel, noting that the quoted language did not evidence that all payments to Claimant must be made to the SCU but rather the decretal paragraph constituted a noticing provision so that the SCU would have the latest contact and employment information for the parties, presumably to enable SCU to pursue its collection efforts.

Discussion

Generally, a claim for which a proof of claim is filed is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Such proof of claim constitutes *prima facie* evidence of the validity and amount of the claim if the proof of claim was executed and filed in accordance with the Bankruptcy Rules. Fed. R. Bankr. P. 3001(f). The claimant must allege facts sufficient to support the claim and attach supporting documentation to a proof of claim. *In re Aiolova*, No. 11-10503, 2013 Bankr. LEXIS 4504, at *5-6 (Bankr. S.D.N.Y. Oct. 29, 2013). The party objecting to the proof of claim has the burden of going forward with sufficient evidence (i) to rebut the validity or amount of the claim asserted or (ii) to show the claim should be disallowed. *Id.*, 2013 Bankr. LEXIS 4504, at *6; *Primavera Familienstifung v.*

*Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001). Once the objecting party succeeds in overcoming the *prima facie* effect given to a proof of claim, the burden shifts back to the claimant to provide support for the validity of its claim by preponderance of the evidence that the claim should be allowed under applicable law. *Aiolova*, 2013 Bankr. LEXIS 4504, at *7-8; *In re Residential Capital, LLC*, No. 12-12020, 2014 Bankr. LEXIS 481, at *10 (Bankr. S.D.N.Y. Feb. 5, 2014).

Here, the Amended Claim sufficiently sets forth the amounts owed, the basis of the claim along with various judgments and orders attached in support of the claim, an itemized list of expenses incurred relating to the child support add-on expenses incurred from 2014 through 2019 and the payments she has received thus far on her claim. As filed, the Amended Claim constitutes *prima facie* evidence of the domestic support obligation.

As the objecting party, the debtor has the burden of coming forward with sufficient evidence (i) to rebut the validity or amount of the claim asserted or (ii) to show the claim should be disallowed. Here, the debtor does not deny that the Amended Claim is for unpaid child support, child support add-ons, spousal support and legal fees, and that the claim constitutes a domestic support obligation entitled to priority pursuant to § 507(a)(1)(A). While the debtor raises for the first time in his Reply that he doesn't owe Claimant any "add ons" or maintenance, the debtor offers no evidence to demonstrate that he has satisfied the debt or that the calculation set forth in the Amended Claim is incorrect. Indeed, the debtor's pleadings could hardly be characterized as an objection to the allowance of the Amended Claim or to its the validity when his arguments are simply 1) limit the Amended Claim to the amount available for distribution and 2) make the payments to a third party.

As to the first argument, the debtor offers no legal authority for partially disallowing and reducing Claimant's $272,862.62 claim to the $44,305.03 in outstanding child support arrears simply because there are insufficient funds in the estate to pay the Amended Claim

in full. Availability of funds for distribution has no bearing on the validity, priority, and amount of a creditor's claim, and the debtor offers no statutory or case authority to support his position. In short, the debtor wants this Court to disallow and expunge the remainder of Amended Claim for arrears relating to child support add-ons expenses, spousal support and court awarded legal fees so that the only remaining portion of the Amended Claim consists of child support payments that are subject to collection by the SCU. The question naturally arises: why has the debtor so zealously made such an unsupported argument? The answer lies in the debtor's concession that the ultimate thrust of his argument is stop the SCU from the continued garnishment of his wages, conveniently ignoring that had he fulfilled his child support obligations Claimant would not have turned to the SCU for assistance in collection which resulted in the wage garnishment. Having offered no basis from which the Court can conclude that the amount of the Amended Claim is excessive, the debtor's request for partial disallowance of the claim is denied.

Additionally, the Court notes that when the trustee makes a distribution to Claimant on her § 507(a)(1)(A) claim, it will reduce the aggregate amount owed to her regardless of whether it's for child support, child support "add ons", maintenance or legal fees. The debtor has not cited to any provision the Bankruptcy Code or any case authority that mandates that any payment made in respect of a domestic support obligation must first be applied to reduce the child support arrears owed as opposed to the child support add-ons, spousal support or legal fees awarded by the state court. While the debtor argues that the Judgment of Divorce requires the debtor's share of the net proceeds from the sale of the marital residence be used to pay child support arrears, the Court reminds the debtor that the sale proceeds available for distribution on the Amended Claim comes not from the debtor's equity in the marital home, but rather from the subordination of the tax lien held by New York State under § 724(b)(2). *See* Memorandum Decision [Dkt. No. 61]. In sum, given the encumbrances on the

marital home, the debtor did not have any equity in the marital home. Thus, the debtor's Objection seeks to improperly use the bankruptcy claims process to expunge the remainder of the Amended Claim in excess of $44,000, and thus, forestall Claimant's ability to enforce her nondischargeable domestic support obligation outside of bankruptcy. As this Court has noted, if the debtor wants to modify amounts owed to Claimant for spousal maintenance and child support, the state court that issued those judgments in favor of Claimant is the proper forum for that request.

The debtor's second argument that all distributions of the sale proceeds on account of the domestic support claim must be paid directly to SCU is not only legally and factually unsupported but, as discussed above, is grounded on a misrepresentation as to what is set forth in the state court judgments and orders. A full and careful reading of the relevant portions of the state court judgments and orders would have readily disclosed that nothing in the Judgment of Divorce or the April 2019 Order require that payments to Claimant be made through the SCU.[5] The Judgment of Divorce provides that "if any of the child support arrears due through December 31, 2013 are still due and owing at the time of the closing [of the sale of the marital residence], they shall be paid to [Claimant] from the [Debtor's] share of the net proceeds" and does not specify that payment must be made to Claimant through the SCU. Moreover, the Judgment of Divorce was entered prior to Claimant submitting the June 2017 Judgment to the SCU for enforcement. Accordingly, the Judgment of Divorce could not have intended that all payments for child support be made through the SCU. As stated above, the noticing provision in the April 2019 Order is to enable the SCU to contact the

---

[5] Additionally, as noted above, the debtor argues in passing that the *Rooker-Feldman* doctrine applies, but the amended reply did not set forth the elements of the *Rooker-Feldman* doctrine nor sufficiently explain how it is even applicable to the issues raised by the Objection. Moreover, because the Judgment of Divorce and April 8, 2019 Order do not contain any provision requiring payments be made directly to the SCU, any argument that the *Rooker-Feldman* doctrine controls must fail.

relevant parties in its enforcement and collection endeavors and is not a requirement that any and all payments to the Claimant be made directly to the SCU.

The SCU has not filed a proof of claim in this chapter 7 case, nor has any evidence been proffered by the debtor that Claimant assigned all or any portion of the amounts due her under the Amended Claim to the SCU. As such, SCU is not a creditor in this bankruptcy case entitled to a distribution.

Having carefully considered the submissions and arguments of the parties, the Court concludes that the debtor failed to meet his burden of coming forward to rebut the validity, priority or amount of the Amended Claim and failed to demonstrate that the SCU is the proper recipient of the trustee's proposed distribution on the Amended Claim.

## Conclusion

For the reasons set forth above and on the record at the November 28, 2023 hearing, the debtor's objection to the Amended Claim is overruled.

So ordered.

Dated: December 28, 2023
Central Islip, New York



_____
**Louis A. Scarcella**
**United States Bankruptcy Judge**